IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEVIN RABBITT, individually and on )
behalf of all others similarly situated, )
                              )
       Plaintiff, )       No. 25 C 11312
                              )
       v. )       Judge Robert W. Gettleman
                              )
ROHRMAN MIDWEST MOTORS, )
INC. D/B/A ARLINGTON ACURA, )
                              )
       Defendant. )

**<u>MEMORANDUM OPINION & ORDER</u>**

Plaintiff Devin Rabbitt brings a one-count putative class action against defendant

Rohrman Midwest Motors alleging a violation of the Telephone Consumer Privacy Act

("TCPA" or "the Act"), 47 U.S.C. § 227.  Defendant moves to dismiss the complaint.  For

the reasons below, the motion to dismiss (Doc. 14) is denied.

**<u>DISCUSSION</u>**

This is ultimately a case about the interpretation of a provision of the TCPA,

47 U.S.C § 227(c).  The relevant factual background is as follows: Plaintiff registered her

phone number with the national do-not-call registry.  Some time after, defendant sent

plaintiff multiple unsolicited telemarketing text messages.  According to plaintiff,

defendant's telemarketing texts were sent in violation of 47 U.S.C. § 227(c)(5) and its

implementing regulation, 47 C.F.R. § 64.1200(c), which provides that: "No person or entity

shall initiate any telephone solicitation to…[a] residential telephone subscriber who has

registered his or her telephone number on the national do-not-call registry."

1

Defendant argues that the complaint should be dismissed for two reasons. First, defendant argues that § 227(c)(5), the subsection of the TCPA that authorizes a private right of action, does not cover text messages. Second, defendant argues that § 227(c) applies only to residential landlines, not cellular phones.

Plaintiff responds that § 227(c)(5) applies to text messages and argues that the overwhelming weight of authority supports this reading of the statute. In addition, plaintiff argues that the court should follow the Federal Communications Commission's ("FCC") interpretation of § 227(c)(5) because it survives arbitrary and capricious review.

The court finds that § 227(c)(5) applies to text messages. Before explaining its finding, the court first explains the relevant standard of review.

Defendant is correct that the arbitrary and capricious standard is not applicable here. The arbitrary and capricious standard comes from the Administrative Procedure Act ("APA"), which provides that "the reviewing court shall…hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). But defendant is not asking this court to set aside the FCC's action, findings, or conclusions under the APA. The relevant FCC action here is its determination, known as the "2003 Order," that the TCPA "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service." Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 68 Fed. Reg. 44144 at 44165 (July 25, 2003) (final rule). Defendant is not asking the court to hold unlawful and set aside the 2003 Order. Instead, defendant is simply asking the

2

court not to defer to the 2003 Order, or any other FCC action reflecting its interpretation of § 227, in determining whether the TCPA's private right of action is available to plaintiff. [1] Thus, plaintiff's extensive argument about the arbitrary and capricious standard is misplaced.

As defendant correctly argues, the applicable standard of review was articulated by the Supreme Court in McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.: where no statute expressly precludes judicial review: "a district court must independently determine for itself whether the agency's interpretation of a statute is correct." 606 U.S. 146, 155 (2025).[2] In doing so, the court "must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." Id. (citing Loper Bright Enters. v. Raimondo, 603 U.S. 369, 402 (2024)).

Using the ordinary principles of statutory interpretation, the court finds that § 227(c)(5) applies to text messages sent to cellular phones. That section affords a private right of action to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." The "regulations" that § 227(c)(5) refers to are provided by § 227(c)(1), which mandates that that "the [FCC] shall initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."

---

[1] The 2003 Order is not the only instance where the FCC has determined that the TCPA applies to text messages sent to cellular phones. For example, in 2024 the FCC amended 47 C.F.R. § 64.1200(e) to reflect the application of its National Do Not Call Registry regulations to text messages sent to cellular phones. Defendant is not asking the court to set aside this 2024 action or any FCC action that reflects its interpretation of § 227.

[2] In McLaughlin, the Supreme Court also determined that the Hobbs Act, 28 U.S.C. § 2342(1), does not preclude "district court review in enforcement proceedings." 606 U.S. at 162. Thus, because no statute expressly precludes judicial review, the court must independently determine whether § 227(c)(5) applies to text messages.

3

To begin, the text of § 227(c)(5), which creates the private right of action, directly references the regulations mandated by § 227(c)(1).  The FCC has enacted numerous regulations under the mandate in § 227(c)(1).  Most recently, in 2024 the FCC amended 47 C.F.R. § 64.1200(e), which now reads: "The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'" (emphasis added); see also 89 Fed. Reg. 5098, 5104 (Jan. 26, 2024) (final rule).[3]

Reading § 227(c)(5) in conjunction with § 227(c)(1) highlights the conflict at the core of this statutory interpretation problem.  On one hand, § 227(c)(5) mentions a private right of action for individuals who receive "more than one telephone call" in violation of the regulations promulgated under §227(c)(1).  (Emphasis added). On the other hand, § 227(c)(1) mentions regulations "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."  (Emphasis added).  Boiled down, the conflict here is between "telephone call" and "telephone solicitations."  The Act defines the term "telephone solicitation" as "the initiation of a telephone call or message for [specified purposes]." 47 U.S.C. § 227(a)(4).  The Act does not define "telephone call."  The court has no issue concluding that a text message qualifies as a "telephone solicitation," and defendant does not argue otherwise.  Instead, defendant's position is that the private right of action in

---

[3] In light of this regulatory history, defendant's argument that "The FCC has not enacted a regulation applying Section 227(c) to text messages" is confusing.  As described above, the FCC has indeed enacted a regulation that applies 227(c) to text messages.  Contrary to defendant's assertion that "the FCC intentionally omitted text messages or SMS messages from its regulations within Section 64.1200(c) and (d)," 47 C.F.R. § 64.1200(e) directly includes text messages within the ambit of sections 64.1200(c) and (d).

§ 227(c)(5) extends only to "telephone calls," and text messages cannot qualify as telephone calls.

As the court understands it, defendant's position is that no matter what regulations the FCC promulgates under its § 227(c)(1) authority, the private right of action in § 227(c)(5) applies only to "telephone call[s]." Although this argument has a literalist textual appeal, the court finds that § 227(c)(5) must be read in the context of the referenced "regulations" that are mandated by § 227(c)(1). See Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) (explaining that "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme" (internal quotation omitted)).

The implication of defendant's position is that when Congress created a private right of action tied to violations of the "regulations" promulgated under §227(c)(1), it intended the private right of action to extend only to regulations concerning "telephone call[s]," which constitute a subset of the larger set of "telephone solicitations" that Congress mandated the FCC to regulate under § 227(c)(1). But defendant offers no explanation as to why this would be the case. Of course, as defendant correctly notes, text messaging did not exist as a technology in 1991. But this technological backdrop makes defendant's reading of the statute more confusing, because it implies a Congressional intent to distinguish "telephone call[s]" (voice calls only) from "telephone solicitations" (a category including texts) in 1991, when there was no difference between these concepts. Defendant has not provided a rationale explaining why Congress would make such a distinction or provided any legislative history supporting the proposition that Congress did make this distinction.

The better reading of § 227(c)(5) recognizes that it is part of a statutory scheme that provides a private right of action to individuals who are the victims of multiple violations of the regulations promulgated by the FCC under §227(c)(1) within a 12-month period. See Gustafson v. Alloyd Co., 513 U.S. 561, 569 (1995) (explaining that a statute should "be interpreted as a symmetrical and coherent regulatory scheme"). Congress directed the FCC to develop these regulations to "protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." § 227(c)(1). The FCC did so, promulgating numerous regulations including C.F.R. § 64.1200(e), which specifically applies C.F.R. § 64.1200(c) and (d) to text messages. When interpreting a statute, the court is tasked with acting as the faithful agent of Congress. See generally Henry M. Hart, Jr. & Albert M. Sacks, The Legal Process: Basic Problems in the Making and Application of Law, 126 Yale L.J. 438, 475 (2016) (observing that the "'faithful agent' model is the guiding paradigm of many mainstream statutory interpretation theories and doctrine"). Despite its literalist textual appeal, the court cannot accept defendant's reading of §227(c)(1) because it would undercut Congress's otherwise coherent regulatory scheme for a reason that neither defendant nor this court can articulate. Based on the court's independent examination of the TCPA, it agrees with the FCC that § 227(c)(5) applies to text messages,

There is an additional reason to reject defendant's reading of §227(c)(5): statutory stare decisis. The term "telephone call" appears many times throughout §227. In 2009, the Ninth Circuit held "that a text message is a 'call' within the meaning of the TCPA." Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 952 (9th Cir. 2009). Relying on that line of precedent, the Supreme Court later stated in dicta that "[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of §227(b)." Campbell-

Ewald Co. v. Gomez, 577 U.S. 153, 157 (2016), as revised (Feb. 9, 2016). Satterfield was decided using a Chevron analysis. 569 F.3d at 952. Although Loper Bright overruled Chevron, the Loper Bright Court held that its decision does not "call into question prior cases that relied on the *Chevron* framework. The holdings of those cases that specific agency actions are lawful . . . are still subject to statutory stare decisis despite our change in interpretive methodology." Loper Bright, 603 U.S. at 412 (emphasis added). Thus, past determinations, such as Satterfield, that a text message is a call for the purposes of the TCPA are still subject to statutory stare decisis. See Hernandez v. Beford Dental, L.L.C., No. 25 CV 6787 at 2 (N.D. Ill. Feb. 4, 2026) (declining "to hold that the TCPA does not apply to text messages" because of statutory stare decisis).

Finally, the court is not persuaded by defendant's argument that "Congress also reaffirmed that Section 227(c) only relates to telephone calls, not text messages, because it has twice amended other provisions of the TCPA to explicitly reference text messages but chose not to amend 227(c) for those purposes." Defendant correctly observes that Congress most recently amended the TCPA in 2018. The regulatory history and case law discussed above occurred prior to 2018. Thus, in 2018 it would have been known to Congress that the courts and the FCC were both consistently interpreting § 227(c) to include text messages.

That Congress did not change anything about §227(c) in the 2018 amendments can be read to represent exactly the opposite of what defendant advocates. In light of the regulatory history and case law that was known to Congress in 2018, Congress had the option to take affirmative action to exclude text messages from § 227(c)'s coverage. Congress did not do so. If Congress's inaction in 2018 is to be ascribed any meaning, the court interprets it as an acceptance of the existing case law and regulations that applied §227(c) to text messages.

This read on Congress's inaction is in harmony with the oft-repeated principle that statutory stare decisis is particularly strong, because Congress can change what the courts have concluded.  See, e.g., Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 274 (2014) (explaining that "[t]he principle of *stare decisis* has special force in respect to statutory interpretation because Congress remains free to alter what we have done" (internal quotations omitted)); John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 139 (2008) (similar).

Having resolved the text message issue, the court confronts defendant's contention that § 277(c)(5) "only applies to residential landlines, not cellular phones."  As an initial observation, the text of §227(c)(5) (quoted above) does not mention the term "residential."[4] Nevertheless, consistent with the court's earlier analysis, §227(c)(5) must be understood in the context of the referenced regulations mandated by §227(c)(1), which orders the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." The term "residential telephone subscribers" is not defined in the statute.  The question posed by defendant is whether that term can include cell phone subscribers.

Since 2003, the FCC has treated cell phone subscribers as covered by the statutory language in §227(c).  See 68 Fed. Reg. 44144, 44146-47 (July 25, 2003).  In promulgating this rule, the FCC explained that,

> [W]e believe it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections. Congress afforded wireless subscribers particular protections in the context of autodialers and prerecorded calls. 47 U.S.C. 227(b)(1)(A)(iii). In addition, although Congress expressed concern with residential privacy, it also was concerned with the nuisance, expense and

---

[4] The term "landline" does not appear anywhere in § 227.

burden that telephone solicitations place on consumers. Therefore, we conclude that wireless subscribers may participate in the national do-not-call list.  Id.

While the court is not required to defer to the FCC's interpretation of the statute, the court finds its reasoning persuasive.  Even after Loper Bright, a court still may afford an agency interpretation "weight…depend[ing] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."  Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944).

The supplemental authority provided by defendant points to yet another reason to accept this reading of the statute: "[t]he reality is that most individuals today utilize cell phones as the primary, and sometimes only, telephone in their residence. If the TCPA were to only apply to a landline user but not a cell phone user, a tremendous number of individuals' privacy interests would remain unprotected."  Loudermilk v. Maelys Cosmetics USA, Inc., 2025 WL 3625779, at *3 (N.D. Ga. Dec. 11, 2025).  Reflecting on this outcome, the court in Radvanskv. 1-800-FLOWERS.COM, INC. (one of the supplemental authorities provided by defendant) concluded, "[s]urely, that cannot be the result Congress intended."  2026 WL 456919, at *2 (N.D. Ga. Feb. 17, 2026).  See also Showers v. Pelican Inv. Holdings Grp., LLC, No. 3:23-CV-02864-NJR, 2026 WL 251730, at *6 (S.D. Ill. Jan. 30, 2026) (holding that "based on the Court's independent examination of the TCPA, it is persuaded that the FCC got it right—cell phone users may qualify as 'residential subscribers' whose numbers may be added to the DNC list").  Consequently, the court concludes that § 277(c)(5) applies to cellular phones.

Having addressed the statutory questions under the TCPA, the court evaluates the

sufficiency of plaintiff's complaint. Construing all of plaintiff's factual allegations as true and drawing all reasonable inferences in her favor, the court concludes that plaintiff has plausibly stated a claim under the TCPA. See Virnich v. Vorwald, 664 F.3d 206, 212 (7th Cir. 2011). Plaintiff has alleged that defendant, in violation of the TCPA, initiated telephones solicitations to her and putative class members despite their registration on the National Do-Not-Call Registry. Consequently, the motion to dismiss is denied.

## CONCLUSION

For the above reasons, the motion to dismiss (Doc. 14) is denied. Defendant is directed to answer the complaint by April 20, 2026. The parties are directed to file a joint status report using this court's form on or before April 27, 2026.

**ENTER:**

Robert W. Gettleman
United States District Judge

**DATE: March 27, 2026**

10